2001 WY 82

**Jeff WORCESTER, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

**No. 00–31.**

Supreme Court of Wyoming.

Aug. 31, 2001.

---

Michael N. Deegan, Gillette, WY, Representing Petitioner.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Devon O'Connell Coleman, Adjunct Faculty Director of the Prosecution Assistance Program; Mackenzie Hunt, Student Director; and Joseph J. Simola, Student Intern, Representing Respondent.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Jeff Worcester filed a petition for writ of review based on four alleged errors committed by the justice of the peace court and affirmed by the district court. We granted his petition, and, upon review, we find no basis for reversal.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Mr. Worcester presents these issues for our review:

*Issue # 1:* Whether or not petitioner's constitutional guarantee of due process of law was violated, and thus plain error committed, when the court permitted evidence utilized by the expert witness to go into the jury room and be considered by the jury when the same was not admitted into evidence as an exhibit.

*Issue # 2:* Whether or not the court, as part of its sentence rendered, exceeded it[s] authority when it ordered petitioner to pay an amount in restitution that was well in excess of the civil jurisdiction of the court.

*Issue # 3:* Whether or not petitioner's constitutional guarantee of due process of law was violated, and thus plain error committed, when the court failed to give an expert witness instruction to the jury so as to enable [it] to properly understand that while [it] might consider an expert's opinion [it was] not bound to accept it.

*Issue # 4:* Whether or not the statute under which the petitioner was convicted (W.S. Sec. 41–13–204, 1977 Repub. Ed. as amended) is void for vagueness in violation of the constitutional guarantee of due process of law.

The State of Wyoming rephrases the issues as:

I. Did the justice of the peace court commit plain error when it permitted models of jet skis, which had not been admitted into evidence, to be taken to the jury room?

II. Did the justice of the peace court exceed its jurisdiction in ordering petitioner to pay restitution in the amount of $16,213.04?

III. Did the justice of the peace court commit plain error when it did not give the jury an instruction on expert witnesses?

IV. Where petitioner did not raise the issue of constitutionality of Wyo. Stat. Ann. § 41–13–204 in the trial court, may he raise the issue on appeal? If so, is Wyo. Stat. Ann. § 41–13–204 void for vagueness?

## FACTS

[¶ 4] On September 5, 1998, Mr. Worcester and Michael Babich were operating personal watercrafts on Keyhole Reservoir in Crook County. They were anticipating the arrival of a large motorboat which created particularly high wakes sufficient for recreational jumping. Mr. Worcester and Mr. Babich aligned themselves side by side in an attempt to cross the wakes at a ninety-degree angle. Mr. Babich proceeded into the wake, and Mr. Worcester followed. Once Mr. Babich went over the first wake, Mr. Worcester could no longer see him but anticipated that he would clear both wakes. After jumping one wake, Mr. Babich came to a halt when he ran out of fuel, and he proceeded to look for his wife while standing on his personal watercraft. Once Mr. Worcester went over the crest, he saw Mr. Babich. Thereafter, Mr. Worcester collided with Mr. Babich's personal watercraft after Mr. Babich was fortunately able to dive into the water. Even so, Mr. Babich suffered severe injury to his legs as the result of the collision. Mr. Worcester was charged by citation with reckless operation of a watercraft in violation of Wyo. Stat. Ann. § 41–13–204 (LexisNexis 2001).[1]

[¶ 5] Mr. Worcester was arraigned in the justice of the peace court and entered a plea

---

1. Section 41–13–204 provides:
     Any person who shall operate any watercraft in such a manner as to endanger the life or limb, or damage the property of, another person, shall be guilty of the crime of reckless operation.

of not guilty. On February 17, 1999, a jury convicted him. Thereafter, he filed a pro se notice of appeal in the district court from the justice of the peace court's judgment. Mr. Worcester was ordered to pay a fine of $200, $20 in court costs, a $50 victim's compensation surcharge, and $573.36 for the cost of prosecution. The justice of the peace court ordered incarceration for a period of ninety days but suspended the sentence and placed Mr. Worcester on six months' unsupervised probation with specific terms and conditions. In addition, Mr. Worcester was assessed seventy percent of the total restitution which equaled $16,312.04. On May 13, 1999, Mr. Worcester filed a second notice of appeal in the district court regarding the justice of the peace court's sentence and order for probation. He filed a motion for a new trial and a notice of amendment to the motion for a new trial which the justice of the peace court denied. On June 14, 1999, Mr. Worcester filed a notice of appeal in the district court from the justice of the peace court's order denying his motion for a new trial. On January 10, 2000, the district court affirmed the justice of the peace court's sentence, order of probation, and order denying Mr. Worcester's motion for a new trial.[2] Mr. Worcester filed a petition for writ of review with this court, seeking review on four specific findings. We granted his petition.

## DISCUSSION

### A. Demonstrative Models

[¶ 6] During trial, the witnesses used two small personal watercraft models for demonstrative purposes in front of the jury. These models were neither offered nor received into evidence as exhibits in the case. However, during the jury's deliberation, the justice of the peace court permitted the models to be taken into the jury room. Mr. Worcester claims the justice of the peace court committed error by permitting the models to go to the jury room during deliberations when they were not admitted into evidence as an exhibit. No objection was lodged at trial against the submission of the

models to the jury; therefore, the plain error analysis applies.

[¶ 7] "A failure to object constitutes a waiver of whatever error occurred, unless the error rises to the level of plain error." *Bradley v. State*, 635 P.2d 1161, 1163–64 (Wyo.1981). The plain error doctrine is applied cautiously and only in exceptional circumstances. *Hays v. State*, 522 P.2d 1004, 1007 (Wyo.1974). A three-part test has been established to determine whether plain error exists. *Capshaw v. State*, 10 P.3d 560, 566 (Wyo.2000). First, the record must be clear as to the incident which is alleged as error. *Id.* Second, the party claiming the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. *Id.* Finally, that party must prove a substantial right has been denied him and, as a result, he has been materially prejudiced. *Id.* Mr. Worcester claims all three requirements are met in this case; however, we disagree. We hold the final requirement has not been satisfied since the error did not result in material prejudice.

[¶ 8] The first requirement is easily satisfied as the alleged error is sufficiently clear in the record. Mr. Worcester next claims his right to due process of law was denied and the submission of the nonadmitted demonstrative models to the jury for deliberations was a violation of a clear and unequivocal rule of law. He relies upon *Hays*, 522 P.2d 1004, wherein this court considered the propriety of submitting nonadmitted evidence to the jury during deliberations without objection. In *Hays*, the trial court provided the jury with an instruction containing the criminal information in the case with a detailed statement of "the essential facts and acts" upon which the crime was charged. 522 P.2d at 1006. Upon reversal of the case, we stated:

> Viewed factually, this resulted in the submission to the jury of a written evidentiary statement inadmissible in evidence by any standard in the guise of an instruction with probable reliance thereon by the jury in its deliberations. *The submission to the*

---

**2.** The justice of the peace court's order was affirmed in all respects except the district court vacated imposition of the crime victim's compensation surcharge.

*jury of papers or exhibits not received in evidence is prejudicial error.*

522 P.2d at 1008 (emphasis added). This is the law in Wyoming which we herein reaffirm recognizing it still provides the most appropriate bright-line rule. However, the submission of demonstrative models which have not been admitted into evidence presents a factual situation not previously considered by this court.

■ [¶ 9] Demonstrative evidence has been defined as "[p]hysical evidence that one can see and inspect (such as a model or photograph) and that, while of probative value and usu[ally] offered to clarify testimony, does not play a direct part in the incident in question." Black's Law Dictionary 577 (7th ed.1999). In addition:

> [J]ust as the testimony of the witness is not sent to the jury room, so illustrative objects should be left behind when the jury retires to deliberate. This practice will reduce the likelihood that jurors will use the object as a source of original inference. Moreover, it will eliminate any incentive for counsel to use illustrative objects solely as a method of smuggling argument into the jury room.

22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5174 at 137 (1978).

[¶ 10] It is uniformly viewed as improper to send into the jury room items not admitted into evidence. 2 John W. Strong, McCormick on Evidence § 217 (5th ed.1999). *Pierce v. Ramsey Winch Company,* 753 F.2d 416 (5th Cir.1985), addressed the use of jury charts and other visual aids that have not been admitted into evidence but summarize or organize testimony or documents which have already been properly admitted. The Fifth Circuit Court of Appeals held that such aids are not evidence and, absent the consent of the parties, they should not be sent to the jury room. 753 F.2d at 431; *see also GNB Battery Technologies, Inc. v. Exide Corpora-*

*tion,* 876 F.Supp. 582, 604 (D.Del.1995), *aff'd,* 78 F.3d 605 (Fed.Cir.1996). *United States v. Wood,* 943 F.2d 1048, 1053 (9th Cir.1991),[3] addressed the very same type of evidence as that in *Pierce* and held the Ninth Circuit Court of Appeals had long held such evidence should only be used as testimonial aid and should not be admitted into evidence or otherwise used by the jury during the deliberative process. Moreover, in *Osborne v. United States,* 351 F.2d 111, 115 (8th Cir.1965), a transcript of testimony given to a federal grand jury which had not been admitted into evidence at the defendant's trial was sent to the jury room. The court held the highly prejudicial and inadmissible evidence contained in the transcript deprived the defendant of a fair trial and "[t]he delivery to the jury for [its] consideration of an exhibit not received in evidence constitutes error." 351 F.2d at 115. The holding in *Hays,* 522 P.2d 1004, and the persuasive authorities cited in this discussion convince this court that Mr. Worcester has demonstrated that a clear and unequivocal rule of law was violated.

■ [¶ 11] Mr. Worcester's final burden is to prove he has been denied a substantial right and, as a result, he has been materially prejudiced. He relies upon *Hays* in which the court found plain error based on material prejudice to the defendant. 522 P.2d at 1008. However, the nonadmitted evidentiary statement submitted to the jury in *Hays* concerned unusually prejudicial information that directly contradicted the defendant's sole defense.[4] *Id.* The evidentiary statement read by the trial judge attacked the defendant's credibility while bolstering the victim's credibility, therefore resulting in material prejudice. *Id.* The plain error rule must be applied to each case on its own particular facts. *Clearwater v. State,* 2 P.3d 548, 552 (Wyo.2000).

[¶ 12] While we recognize the use of the demonstrative models under the circumstances of the instant case was error, we can

---

3. In *Pierce, GNB Battery Technologies, Inc.,* and *Wood,* the courts found no plain error in refusing to admit the exhibits at issue.

4. Mr. Hays was convicted of rape, aggravated assault, and assault and battery with a dangerous weapon. *Hays,* 522 P.2d at 1005. The eviden-

tiary statement related specific events of threats, the use of deadly weapons, and forcible rape. 522 P.2d at 1006. This was in direct contradiction to Mr. Hays' sole defense theory at trial which was consent. 522 P.2d at 1008.

discern no indication that the jury used or could have used the models for any improper or prejudicial purpose. A lack of prejudice is indicated by the fact that both the prosecution and the defense utilized the models. Likewise, the defense counsel had the opportunity to cross-examine John Davis, the Moorcroft game warden, and his demonstrative use of the models. As the state points out, the jury could recreate the accident by using any devices available to it in the deliberation room; e.g., paper, pens, or even the jurors' own hands. These models were not physically altered to depict the resultant damage, but rather they were merely generic models. Upon review, neither this court nor Mr. Worcester can be sure of what use, if any, the jury made of the models. Without a more specific indication of prejudice, Mr. Worcester's generalized allegation of prejudice is not sufficient to require reversal. *Scheikofsky v. State*, 636 P.2d 1107, 1111 (Wyo.1981). We cannot discern a reasonable possibility that, in the absence of the models being sent into the jury room, the verdict may have been more favorable to Mr. Worcester. *Nimmo v. State*, 603 P.2d 386, 395 (Wyo.1979). Mr. Worcester has failed to establish prejudice from this error; therefore, we conclude it is harmless.

## B. Restitution in Excess of the Civil Jurisdiction of the Court

[¶ 13] Mr. Worcester's second contention is that the justice of the peace court exceeded its subject matter jurisdiction in a criminal matter when it ordered an amount in restitution in excess of its civil jurisdiction. This issue concerns a matter of statutory interpretation. This court interprets statutes by giving effect to the legislature's intent. *State ex rel. Wyoming Workers' Safety and Compensation Division v. Garl*, 2001 WY 59, ¶ 20, 26 P.3d 1029, ¶ 20 (Wyo.2001). We begin by making an inquiry relating to the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Id.* We give effect to every word, clause, and sentence and construe together all components of a statute *in pari materia. Id.* Statutory interpretation is a question of law. *LePage v. State, Department of Health*, 2001 WY 26,

¶ 6, 18 P.3d 1177, ¶ 6 (Wyo.2001). We review questions of law de novo without affording deference to the district court's decision. *Amoco Production Company v. EM Nominee Partnership Company*, 2 P.3d 534, 540 (Wyo.2000).

[¶ 14] The criminal jurisdiction of justice of the peace courts is set forth in Wyo. Stat. Ann. § 5-4-116 (LexisNexis 2001) which provides:

Justice of the peace courts have jurisdiction in all criminal cases amounting to misdemeanors for which the punishment prescribed by law does not exceed imprisonment for more than six (6) months and a fine of not more than seven hundred fifty dollars ($750.00). Jurisdiction shall also include those criminal cases in which the defendant is placed on probation for a period exceeding the maximum six (6) months imprisonment sentence under W.S. 31-5-233(d) [§ 31-5-233(e)].

Wyo. Stat. Ann. § 7-9-102 (LexisNexis 2001) outlines the court's ability to order restitution and provides in pertinent part: "In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114." Wyo. Stat. Ann. § 5-4-106(a)(x) (LexisNexis 2001) establishes the civil jurisdictional limits for justices of the peace as: "Of all civil actions where the amount in controversy, exclusive of costs, does not exceed three thousand dollars ($3,000.00)."

[¶ 15] The court ordered restitution in the total amount of $16,312.04. Wyo. Stat. Ann. § 7-9-101(a)(iv) (LexisNexis 2001) defines restitution as "full or partial payment of pecuniary damage to a victim." Wyo. Stat. Ann. § 7-9-101(a)(v) (LexisNexis 2001) defines victim as "a person who has suffered pecuniary damage as a result of a defendant's criminal activities." Mr. Worcester relies upon Wyo. Stat. Ann. § 7-9-101(a)(iii) (LexisNexis 2001) which defines pecuniary damage as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death." He as-

serts this statutory provision in conjunction with Wyo. Stat. Ann. § 7–9–103(b) (LEXIS 1999) (amended 2000) prohibits the justice of the peace court from ordering restitution in excess of $3,000—the civil action jurisdictional limit for justice of the peace courts. Section 7–9–103(b) stated: "To satisfy the order, the clerk, upon request of the victim or the district attorney, may issue execution against the defendant for any assets including wages subject to attachment in the same manner as in a civil action." Mr. Worcester contends the words "civil action" are critical to resolving this issue. However, the statutory language does not state "in a civil action in the same court as the conviction occurred." This court has no power to add to, or to substitute, words in a statute. *Longfellow v. State,* 803 P.2d 1383, 1388 (Wyo.1991). That authority is vested in the legislature, and we will not encroach upon its proper authority. *Id.* We do not read these statutes to require the justice of the peace court to limit restitution to $3,000.

[¶ 16] Furthermore, Mr. Worcester's argument ignores the difference between the statutes establishing the jurisdiction of the justice of the peace courts and the statutes granting authority to such courts to award restitution. The authority to require restitution in criminal cases is delineated in Wyo. Stat. Ann. § 5–4–106 (LexisNexis 2001) and is not constrained by the civil jurisdictional limits of § 7–9–102. Mr. Worcester argues the legislature intended that disputes involving large sums of money should be heard and determined in the district court. However, there is no indication the legislature intended to limit a victim's restitution or a court's authority to award such restitution in criminal cases subject to its jurisdiction based upon the civil jurisdictional limits of the court in which the conviction occurred. Under Mr. Worcester's theory, justice of the peace courts would have to determine whether the restitution in a criminal case could potentially exceed the court's civil jurisdictional limits before hearing a case. If a case could potentially yield a restitution amount in excess of the justice of the peace court's jurisdiction, Mr. Worcester's argument would require the district court to hear the misdemeanor case.

We do not believe this was the legislature's intent.

[¶ 17] Section 5–4–116 limits the justice of the peace court's jurisdiction to all criminal cases "for which the *punishment* prescribed by law does not exceed imprisonment for more than six (6) months and a fine of not more than seven hundred fifty dollars ($750.00)." (Emphasis added). Mr. Worcester equates the term restitution with punishment, therefore implying the court's jurisdiction is limited to cases where restitution would not exceed more than $750. However, the statute specifically identifies punishment as imprisonment, fines, and probation. We find no authority for equating allowed restitution with the punishment levels within the justice of the peace court's jurisdiction. In *Keller v. State,* 723 P.2d 1244, 1246 (Wyo. 1986), we held defendants should be informed of the possibility that restitution may be required under W.R.Cr.P 15(c) as part of the "penalty" of a crime to which they may plead guilty. However, in that case, we were concerned that proper notice be given to a defendant of the impact of a guilty plea before a plea is accepted. We were not concerned with determining the extent of the criminal jurisdiction of justice of the peace courts intended by the legislature. Based upon legislative intent and statutory construction, we conclude the justice of the peace court did not exceed its jurisdiction when it ordered $16,312.04 in restitution.

### C. Expert Witness Jury Instruction

[¶ 18] Next, Mr. Worcester claims he was denied his right to due process of law when the court failed to give an expert witness instruction to the jury. Officer Davis testified and attempted to reconstruct what he believed occurred in the personal watercraft collision. The doctrine of plain error applies because Mr. Worcester never requested an expert witness instruction, nor was an objection lodged.

[¶ 19] The record is sufficiently clear to identify Mr. Worcester's alleged error—an expert witness instruction was not provided to the jury. Next, he argues an expert witness instruction is required by law. A qualified expert witness may testify about scienti-

fic, technical, or specialized knowledge if such testimony will help the jury understand the case. W.R.E. 702. Clearly, Officer Davis testified as an expert witness. The pertinent issue is whether the justice of the peace court erred by not providing the jury with an expert witness instruction.

[¶ 20] W.R.Cr.P. 30 entitled "Instructions to jury; objections" states in pertinent part:

> (a) At the close of the evidence or at such earlier time before or during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.... No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.

We have stated:

> It is generally considered that it is the duty of the court to instruct the jury on the essential law of the case and of such matters of law without which the defendant will not receive a fair trial, or without which a jury of laymen would be apt to go wrong....
>
> ... While it is generally considered that a request for instruction should be made and an exception to a refusal taken, in order for a defendant to avail himself of the error in the Supreme Court, this is not the universal rule, and there are exceptions to it, especially where the matter is fundamental and goes to the gist of the case.

*Gardner v. State*, 27 Wyo. 316, 196 P. 750, 754 (1921). In *Runnion v. Kitts*, 531 P.2d 1307, 1310 (Wyo.1975), we recognized it is preferable to offer an expert witness jury instruction. However, we do not believe the lack of such an instruction in this case prevented Mr. Worcester from receiving a fair trial or caused the jury to misunderstand the law. Here, the justice of the peace court did provide a minimally sufficient instruction in the form of a preliminary instruction which outlined the duties of the court and the jury. *See Runnion*, 531 P.2d at 1310.

[¶ 21] Mr. Worcester asserts he was prejudiced by Officer Davis' testimony in which he stated that Mr. Worcester hit Mr. Babich head on. This testimony directly disputed Mr. Worcester's and Mr. Babich's testimony that their personal watercrafts collided at a ninety-degree angle. Mr. Worcester maintains this testimony was extremely damaging because it contradicted his assertion that his view of Mr. Babich was obstructed due to the crest of the wake, an assertion that would have been implausible if he had been proceeding in a head-on direction. Mr. Worcester contends an expert witness instruction would have instructed the jury that it was free to disregard the expert's opinion if it found it to be unreasonable. However, the justice of the peace court's instructions to the jury did include an instruction that it was to be the sole judge of the witnesses' credibility, including factors to be considered in determining credibility. The jury was instructed to assess the credibility of each witness and to give his or her testimony the consideration it merited, and this logically included the option of disregarding Officer Davis' testimony if it was found to be unreasonable. It is the jury's duty to resolve conflicting testimony and decide the weight to be given to the expert testimony. *Runnion*, 531 P.2d at 1309. "A jury has considerable latitude in its acceptance or rejection of expert testimony." *Id.* We conclude the instructions to the jury prevented any potential prejudice, and therefore we find no error.

### D. Constitutionality of § 41–13–204

[¶ 22] Finally, Mr. Worcester attacks the constitutionality of § 41–13–204 as being void for vagueness. Issues of constitutionality are questions of law and are reviewed de novo. *V–1 Oil Company v. State*, 934 P.2d 740, 742 (Wyo.1997).

> It is our well-established rule that every law is presumed constitutional, and all doubts are resolved in favor of constitutionality. [An appellant] has the burden of demonstrating that [a] statute is unconstitutionally vague. A statute is unconstitutionally vague if people of common intelligence must necessarily guess at its meaning and differ as to its application. A vague statute violates due process be-

cause it fails to give fair notice that the conduct is forbidden and creates the danger of arbitrary and discriminatory enforcement. In determining whether a statute provides sufficient notice, we look to the statutory language and previous court decisions which have limited or applied the statute.

*Smith v. State*, 964 P.2d 421, 422–23 (Wyo. 1998) (citations omitted).

■■■ [¶ 23] Mr. Worcester bases his unconstitutionally vague argument on a comparison of § 41–13–204—the reckless-operation-of-a-watercraft statute under which he was convicted—and its companion statute, Wyo. Stat. Ann. § 41–13–203 (LexisNexis 2001)[5]—which addresses the careless operation of a watercraft. Specifically, Mr. Worcester argues § 41–13–204 in conjunction with § 41–13–203 fails to give a person of ordinary sensibility fair notice that the contemplated conduct is forbidden because both statutes seem to proscribe the same behavior. *Hobbs v. State*, 757 P.2d 1008, 1011 (Wyo.1988).

[¶ 24] We agree with the state that the standard relied upon by Mr. Worcester and articulated in *State v. Gallegos*, 384 P.2d 967, 968 (Wyo.1963), is applicable to whether a statute is internally vague as opposed to a comparison of two different statutes. The state points to *Nowack v. State*, 774 P.2d 561 (Wyo.1989), for the proper analysis. In *Nowack*, the defendant was charged with both driving under the influence—a misdemeanor—and aggravated assault and battery—a felony, both charges arising from the same vehicular accident. 774 P.2d at 562. The defendant claimed the state should have charged him with the statute which exclusively and specifically covered his conduct—, the misdemeanor. *Id.* This court replied quoting from *United States v. Batchelder*,

442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (citation omitted):

"The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments."

774 P.2d at 563.

[¶ 25] Under both statutes at issue in this case, Mr. Worcester was unambiguously provided notice of what the state commands or forbids and the penalties that may be imposed. The difference between § 41–13–204 and § 41–13–203 is the language "endanger" versus "indifferent." Each statute can be read with its plain meaning so that a person of common intelligence would be able to understand the conduct each statute prescribes. Endanger is defined as "to bring into danger or peril." Merriam–Webster's Collegiate Dictionary 381 (10th ed.1999). In contrast, indifferent is defined as "marked by impartiality ... does not matter one way or the other [or] marked by a lack of interest, enthusiasm, or concern for something." *Id.* at 592. Whether one acts indifferently or endangers another or another's property, the conduct is covered by a specific statute. The statutes provide fair notice and clearly define the punishment and the conduct prohibited.

■■■ [¶ 26] Furthermore, unlike *Nowack*, the punishments for violating the statutes at issue in this case are the same.[6] As described in Wyo. Stat. Ann. § 41–13–216(a) (LexisNexis 2001), a conviction under each statute is a misdemeanor punishable by a

---

5. Section 41–13–203 provides:

Any person who operates any watercraft in a careless or heedless manner so as to be indifferent to the person or property of another person, or at a rate of speed greater than will permit him in the exercise of reasonable care to bring the watercraft to a stop within the assured clear distance ahead, is guilty of the crime of careless operation.

6. However, we do recognize the Uniform Bail and Forfeiture Schedules differentiates between the two statutes. Specifically, a defendant is required to post a bond of $110 for a misdemeanor offense under § 41–13–203. W.R.Cr.P. 3.1, Appendix I. In contrast, a misdemeanor under § 41–13–204 is not a bondable offense. *Id.* The distinction in the bond schedule reflects the difference in the severity of the two crimes.

fine of not more than $750, imprisonment for not more than six months, or both, and the person may be refused the privilege of operating any watercraft on any of the waterways of this state for not more than two years. " 'So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.' " *Nowack,* 774 P.2d at 562 (quoting *Batchelder,* 442 U.S. at 123, 99 S.Ct. 2198).

Therefore, Mr. Worcester failed to prove § 41–13–204 is unconstitutionally vague.

[¶ 27]   Affirmed.